Yongmoon Kim
ykim@kimlf.com
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax (201) 273-7117
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PATRICIA L. SCHMIDT , *on behalf of herself and those similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>DISTRESSED ASSET PORTFOLIO III, LLC; CREDITSHOP RECEIVABLES, LLC; CREDIT SHOP LLC FKA CREDIT SHOP, INCORPORATED; and JOHN DOES 1 to 10,<br><br>Defendants. | Civil Action No. 2:25-cv-17802-CCC-CF<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br>~~**and Jury Demand**~~<br>**AND JURY DEMAND** |

## NATURE OF THE CASE

1. This is a putative class action arising from Defendants' unlawful purchase and enforcement of alleged consumer debts when Distressed Asset Portfolio III, LLC ~~("DAP"),~~, CreditShop Receivables, LLC ~~("CSR"),~~, and Credit Shop LLC f/k/a Credit Shop, Incorporated ~~("Credit Shop")~~ failed to first obtain a license to engage in business as a consumer lender or sales finance company, as required by the New Jersey Consumer Finance Licensing Act ("NJCFLA"),[1] at N.J.S.A. 17:11C-3. As a result of Defendants' unlicensed status, the credit accounts became void and unenforceable as of the date they allegedly took assignment of them,

[1] N.J.S.A. 17:11C-1 to -49

pursuant to the NJCFLA, at N.J.S.A. 17:11C-33(b).

2. Plaintiff and the putative class members are New Jersey consumers against whom Defendants have unlawfully enforced consumer debts after unlawfully taking assignment of them.

3. Thus, Plaintiff brings this action on behalf of herself and a class of other New Jersey consumers whose consumer debts were purchased and/or enforced by Defendants when the debts are void, seeking relief under the Consumer Fraud Act ("CFA"), including a declaratory judgment that the credit account contracts are void and unenforceable, that the state court judgments obtained on unlawful debts are void and unenforceable, and an injunction against any further attempts to enforce the credit account contracts in any manner.

4. Additionally, Plaintiff seeks monetary damages on behalf of a class of consumers from whom Defendants collected or attempted to collect any money on the void and unenforceable consumer debts, including treble damages under the CFA.

5. The claims of Plaintiff and the proposed class are directly related to Defendants' collection efforts.

## JURISDICTION AND VENUE

6. This Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. The amount in controversy, exclusive of interest and costs, exceeds $75,000 because Plaintiff and the putative class seek damages, treble damages, restitution, injunctive

relief, statutory attorneys' fees,[2] and other equitable relief, and the aggregated claims at issue exceed the jurisdictional threshold.

8. Further, this matter in controversy exceeds $5,000,000, as each member of the proposed Class of thousands is entitled to treble damages for the enforcement of void debts against them. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Further, at least one Class member and one Defendant belong to a different state. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

9. Venue in this action properly lies in the District Court of New Jersey, Newark Vicinage, as a substantial part of the events giving rise to the claim occurred in this District and Defendants regularly do business in this district.

## PARTIES

10. Plaintiff~~,~~ Patricia L. Schmidt ("Schmidt~~"),~~") is a natural person residing on 74 Bergen Ave Apt B, Bergenfield, New Jersey.

11. At all times relevant to this lawsuit, Plaintiff was a citizen of the State of New Jersey.

12. Defendant Distressed Asset Portfolio III, LLC, is a debt buyer with its principal place of business at 10625 Techwoods Circle, Cincinnati, Ohio 45242. Upon information and belief, Distressed Asset Portfolio III, LLC is a citizen of a state other than New Jersey.

13. Defendant CreditShop Receivables, LLC, is a limited liability company with a registered agent in 251 Little Falls Drive, Wilmington, Delaware 19808. Upon information and

[2] "[I]n calculating the amount in controversy, we must consider potential attorney's fees. Although 28 U.S.C. § 1332 excludes 'interest and costs' from the amount in controversy, attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under [a] statutory cause of action." *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997).

belief, CreditShop Receivables, LLC is a citizen of a state other than New Jersey.

14. Defendant Credit Shop LLC f/k/a Credit Shop, Incorporated, is a limited liability company with an address at registered agent in 1209 Orange Street, Wilmington, Delaware 19801.

15. Plaintiff is informed and believe, and on that basis alleges, that Defendants John Does 1 to 10 are natural persons and/or business entities all of whom reside or are located within the United States and personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by the employees of Defendants that are the subject of this Complaint. Those defendants personally control the illegal acts, policies, and practices utilized by Defendants and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint. Those fictitious names of individuals and businesses alleged for the purpose of substituting names of defendants whose identity will be disclosed in discovery and should be made parties to this action.

16. Some or all of John Does 1-10 set the policies and practices complained of herein.

17. Some or all of John Does 1-10 were actively engaged in the practices complained of herein.

18. In this pleading, "Defendants" in the plural refers to all Defendants.

## FACTUAL ALLEGATIONS

~~**A. Allegations regarding Defendants' practices generally**~~

**A.** ~~**Defendants are in the business of purchasing and taking assignment of defaulted credit accounts originally extended by other creditors, which it then enforces against the borrowers**~~**New Jersey Consumer Finance Licensing Act Framework and the Unlicensed Entities**

19. N.J.S.A. 17:11C-2 defines the "consumer loan business" as follows:

> "Consumer loan business" means the business of making loans of money, credit, goods or things in action, which are to be used

> primarily for personal, family or household purposes, in the amount or value of $50,000 or less and charging, contracting for, or receiving a greater rate of interest, discount or consideration therefor than the lender would be permitted by law to charge if he were not a licensee hereunder, except as authorized by this act and without first obtaining a license from the commissioner. *Any person directly or indirectly engaging in the business of soliciting or taking applications for such loans* of $50,000 or less, or in the business of negotiating or arranging or aiding the borrower or lender in procuring or making such loans of $50,000 or less, or in the business of buying, discounting or endorsing notes, or of furnishing, or procuring guarantee or security for compensation in amounts of $50,000 or less, shall be deemed to be engaging in the consumer loan business.

(Emphasis added).

20. N.J.S.A. 17:11C-3(a) provides: "No person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act."

21. N.J.S.A. 17:11C-33(b) provides, in relevant part:

> A consumer lender who violates or participates in the violation of any provision of section 3 . . . shall be guilty of a crime of the fourth degree. A contract of a loan not invalid for any other reason, in the making or collection of which any act shall have been done which constitutes a crime of the fourth degree under this section, shall be void and the lender shall have no right to collect or receive any principal, interest or charges unless the act was the result of a good faith error . . . .

22. All or substantially all of the accounts of which Distressed Asset Portfolio III, LLC ("DAP"), CreditShop Receivables, LLC ("CSR"), and Credit Shop LLC f/k/a Credit Shop, Incorporated ("Credit Shop") (the "Unlicensed Entities") were involved in were credit accounts with extension of credit less than $50,000 and provided for rates of interest and/or other charges beyond those authorized by the New Jersey Consumer Finance Licensing Act, at N.J.S.A. 17:11C-1 to -49 for licensed consumer lenders.

23. A significant amounts of these accounts are "retail charge accounts" as defined at N.J.S.A. 17:16C-1(r).

~~19.~~24. The Unlicensed Entities are in the business of soliciting, taking applications of, negotiating or arranging or aiding in the procuring or making, purchasing, and/or taking assignment of credit accounts, including defaulted accounts, which they then enforce against the borrowers, directly or indirectly, including through collection letters, lawsuits, and post-judgment collection efforts. This is their principal business.

~~20.~~ In the course of their business, ~~Defendants~~ the Unlicensed Entities have purchased and/or taken assignment of numerous defaulted accounts ~~originally extended by banks or others to New Jersey consumers which were primarily for personal, household, or family purposes.~~

~~21.~~25. ~~In the course of their business, Defendants have allegedly purchased and taken assignment of numerous defaulted~~ /debts originally extended by banks or others to New Jersey consumers which were primarily for personal, household, or family purposes.

~~22. When attempting to collect debts, Defendants use the mail, telephone, the internet and other instruments of interstate commerce.~~

~~23. Defendants purchase past-due and defaulted consumer accounts for pennies on the dollar, and then attempt to collect those accounts itself or through other collection agencies or debt collectors.~~

26. ~~Defendants have asserted that Plaintiff incurred or owed a certain~~By soliciting or taking applications for such loans, by negotiating or arranging or aiding in procuring or making such loans, by making or purchasing or taking assignment of such loans, and/or by enforcing or collecting such loans, the Unlicensed Entities acted as "sales finance compan[ies]" as defined at N.J.S.A. 17:16C-1(f).

27. By soliciting or taking applications for such loans, by negotiating or arranging or aiding in procuring or making such loans, by making or purchasing or taking assignment of such loans, and/or by enforcing or collecting such loans, the Unlicensed Entities engaged in the "consumer loan business" as defined at N.J.S.A. 17:11C-2.

28. During all times relevant to this action, the Unlicensed Entities were not licensed as "sales finance company[ies]" or "consumer lender[s]" pursuant to the NJCFLA, at N.J.S.A. 17:11C-3.

29. During all times relevant to this action, the Unlicensed Entities did not comply with the requirements of the NJCFLA.

30. The Unlicensed Entities engaged in affirmative acts of making and/or collection without complying with the NJCFLA including licensure requirements in violation of N.J.S.A. 17:11C-3.

## B. The Credit Shop / First Bank & Trust Portfolio Acquisition and Securitization Scheme

31. Credit Shop LLC f/k/a Credit Shop, Incorporated is a financial ~~obligation~~technology company, not a bank.

32. Credit Shop (formerly known as CreditShop Holdings LLC) officially changed its name to Mercury® Financial Holdings LLC (Mercury® Financial). Mercury® Financial is "the largest non-bank credit card company in the U.S." *See* **Exhibit A**, p. 1.[3]

33. Mercury® Financial solicits credit card applications and offers credit card products through direct mail, digital affiliates, email origination channels, and co-branded partnerships. *See* **Exhibit A**, p. 2.

[3] The reference to the page numbers for all exhibits correspond to the page numbers of the PDF, not the page number on the document. For example, if the document is 20 pages, page 1 is referencing PDF page 1 of 20.

34. The Mercury® Mastercard was launched as Mercury® Financial's flagship offering. *See* **Exhibit A**, page 1.

35. Rather than legally originating ~~and which arose~~loans themselves, Credit Shop relies on a partnership with First Bank & Trust to acquire large portfolios of existing debt and issue new cards.

36. According to a press release dated September 26, 2018, CreditShop LLC announced the successful conversion of more than half a million Mastercard credit card accounts and $1.4 billion in receivables. *See* **Exhibit B**, p. 1.

37. The press release further stated: "The Mercury Mastercard is marketed by CreditShop, and issued by First Bank & Trust of Brookings, South Dakota." *See* **Exhibit B**, CreditShop Press Release (Sept. 26, 2018), p. 1.

38. According to a March 3, 2021 press release, "MFCCMT 2021-1, represents the Mercury Financial LLC's (Mercury Financial) (formerly known as CreditShop LLC) inaugural securitization issued from their master trust program." *See* **Exhibit C**, KBRA Press Release (Mar. 3, 2021), p. 1.[4]

39. The same press release stated: "Receivables in MFCCMT 2021-1 are generated by accounts owned by First Bank & Trust." *See* **Exhibit C**, KBRA Press Release (Mar. 3, 2021), p. 1.

40. The securitization documents revealed that as of January 31, 2021, accounts in the portfolio had "a weighted average FICO Score of 668, APR of 22.4%, active credit line of $3,769, seasoning of 79 months, average balance on active accounts of approximately $2,428 and an average utilization rate on all active accounts of 64.4%." *See* **Exhibit C**, KBRA Press

[4] Mercury Financial Credit Card Master Trust, Series 2021-1 (“MFCCMT 2021-1”).

Release (Mar. 3, 2021), p. 1.

41. To execute this scheme, original creditors (such as Barclays Bank Delaware) sell their receivables, which are then assigned to First Bank & Trust acting as the program bank.

42. First Bank & Trust subsequently funnels the debt to the unlicensed fintech platform, Credit Shop LLC.

43. CreditShop then uses a securitization structure to hold these receivables.

44. Defendant CreditShop Receivables, LLC acts as a special-purpose vehicle created to hold the credit-card receivables and allow them to be bundled and sold to investors or debt buyers.

45. Upon information and belief, CreditShop Receivables, LLC purchased and took assignment of numerous defaulted credit card accounts originally extended by Barclays Bank Delaware or First Bank & Trust to New Jersey consumers which were primarily for personal, household, or family purposes.

46. Defendant Distressed Asset Portfolio III, LLC operates as a debt buyer taking assignment of the charged-off accounts to facilitate their collection.

47. Distressed Asset Portfolio III is listed as one ~~or more transactions which were primarily for the Plaintiff' personal, family, or household~~of the "Certified Businesses" in the debt buying and receivables management industry. *See* **Exhibit D**, p. 30.

48. These strategic assignments were part of a predetermined business model designed to purchase, hold, securitize, and sell consumer loans through a chain of entities to evade state oversight.

49. Sometime prior to the events alleged herein, Plaintiff Patricia L Schmidt obtained a credit card account ending in 0059 ("Account") issued by Barclays Bank Delaware under the

Barclaycard Rewards® MasterCard brand.

50. The Account was originally issued by Barclays Bank Delaware.

51. Following default and charge-off, the Account was systematically assigned through a chain of transfers involving the Unlicensed Entities. As detailed in the civil action complaint filed against Plaintiff: "Chain of title is as follows: BARCLAYS BANK DELAWARE to First Bank & Trust to Credit Shop LLC fka Credit Shop, Incorpo to CreditShop Receivables, LLC to DISTRESSED ASSET PORTFOLIO III, LLC to Plaintiff for collection purposes. (“." *See* **Exhibit E**, ¶ 4.

52. The void Account remained void when assigned to Unifund CCR LLC (“Unifund”), and Unifund acquired no enforceable right to collect any principal, interest, or charges on the Account.

53. These Defendants function as an integrated securitization and debt-buying framework designed to profit from New Jersey consumer credit accounts while bypassing state oversight.

54. Credit Shop LLC serves as the fintech platform that originates the credit accounts via a partner bank and then packages them for sale or securitization.

55. CreditShop Receivables, LLC serves as a special purpose vehicle used to acquire credit accounts from originators like Credit Shop LLC and hold them for securitization or sale to debt buyers.

56. Distressed Asset Portfolio III, LLC serves as the debt buyer that acquires charged-off portfolios and transfers them to entities engaged in active collection.

57. The Unlicensed Entities engaged in "making" the loan by:

a. Purchasing, acquiring, and holding the receivables immediately after they were transferred from the original creditor;

b. Providing the funding and marketplace platform for the acquisition of the $1.4 billion portfolio;
c. Arranging and facilitating the transfer of the consumer accounts from First Bank & Trust to CreditShop's own unlicensed special-purpose vehicles;
d. Engaging in the business of buying, discounting, or endorsing notes within the meaning of N.J.S.A. 17:11C-2.

58. The Unlicensed Entities engaged in "collection" of the loan by:

~~24.~~a. Acquiring the Debt~~" or "Account").~~ for the purpose of receiving payments and/or assigning it to subsequent purchasers in a chain leading to collection;
b. Exercising rights to receive payments on the Debt;
c. Retaining economic interests in the Note during their respective periods of ownership;
d. Strategically assigning the Note to subsequent entities, including distressed-debt buyers, to facilitate eventual collection through New Jersey courts;
e. Managing the account through charge-off and strategic assignment to affiliated or third-party entities for continued collection efforts.

59. On March 26, 2026, a search of the New Jersey Department of Banking and Insurance website was conducted to ascertain the licensing status of Distressed Asset Portfolio III, LLC, CreditShop Receivables, LLC, and Credit Shop LLC, resulting in a "no records returned" prompt. There was no Consumer Lender License or Sales Finance Company License on record in New Jersey for Distressed Asset Portfolio III, LLC, CreditShop Receivables, LLC, and Credit Shop LLC.

60. Because Distressed Asset Portfolio III, LLC, CreditShop Receivables, LLC, and Credit Shop LLC engaged in the making and collection of Plaintiff's consumer loan without obtaining licenses required under N.J.S.A. 17:11C-3, their conduct violated N.J.S.A. 17:11C-33(b).

61. Under N.J.S.A. 17:11C-33(b), a contract for a loan is void when any act "in the making or collection" of the loan is done that constitutes a violation of the licensing requirements. The Unlicensed Entities' systematic participation in Barclay Bank Delaware's lending and collection structure, from immediate purchase of receivables at origination through

ultimate assignment for collection, constitutes acts "in the making or collection" of Plaintiff's loan.

62. Accordingly, Plaintiff's debt became void ab initio when the Unlicensed Entities participated in making and collecting the debt without proper licensure, and all subsequent assignments, including to Unifund, conveyed only a void debt that cannot be lawfully collected.

**C. The Debt Buying and Collection Industry**

~~25.~~63. The Maryland Court of Appeals described the debt buying industry, consisted of players like the Defendants in this case, as follows:

THE DEBT-BUYING INDUSTRY

> Traditionally, when a borrower or customer failed to pay a debt on time, the creditor would do what was needed to collect the debt either by engaging with the debtor directly or by employing an attorney or outside debt collector to do so. That still occurs, of course, but a new business model that first developed in the late 1980s has become predominant in the debt collection universe, largely because (1) so much of the debt arrearage in the United States, and in Maryland, is credit card debt, and (2) Federal banking regulations require credit card companies that are bank-related to charge off credit card debt that has been delinquent for six months.
>
> The new model, for those companies, and others, is to sell their delinquent accounts to debt buyers for pennies on the dollar — normally between four and five cents but less for older accounts — and thereby recoup at least something without having to bear the expense of further collection efforts. The sales are in bulk. A three-year study by FTC revealed the sale of more than 5,000 "portfolios" containing nearly 90 million consumer accounts with a face value of $143 billion at a cost of $6.5 billion. *2013 FTC Report* at ii, 8, and Table 2.
>
> While beneficial to the initial creditor in light of the charge-off requirement and lucrative to the debt buyer, the manner in which this new model developed and debt buyers carried on their business created significant consumer protection issues. In its 2013 Report, based in part on a 2009 Study, FTC observed that it received "more consumer complaints about debt collectors, including debt buyers, than about any other single industry." *2013 FTC Report* at

> i. *See* also *Collecting Consumer Debts - The Challenges of Change, A Workshop Report*. Federal Trade Commission, February 2009 (hereafter *2009 FTC Report*).
>
> In its 2013 Report, FTC noted that, in its 2009 Report, it had expressed concern that debt buyers "may have insufficient or inaccurate information when they collect on debts, which may result in collectors seeking to recover from the wrong consumer or recover the wrong amount." *2013 FTC Report*. The Commission found that, although debt buyers normally receive from the initial creditor the information needed to be disclosed to the debtor under the Federal Debt Collection Practices Act (15 U.S.C. § 1692g) they often do not receive data relating to disputes raised by the debtor or a breakdown of how much of the debt is for interest, fees, or penalties, and that they rarely disclose to the debtor other information, such as data indicating that collection may be barred by limitations, that may be relevant to whether the alleged debtor is the actual debtor or owes the money and, if so, how much. *2013 FTA Report* at iii-iv.

*LVNV Funding LLC v. Finch*, 207 A.3d 202, 206 (Md. 2019).

~~26.~~64. All or substantially all of the accounts of which Defendants took assignment of extended credit less than $50,000 and provided for rates of interest and/or other charges beyond those authorized by the New Jersey Consumer Finance Licensing Act, at N.J.S.A. 17:11C-1 to -49 for licensed consumer lenders.

65. In the course of their business, ~~Defendants have enforced their assigned~~ Defendant has purchased and/or taken assignment of numerous defaulted accounts ~~against~~ /debts originally extended by banks or others to New Jersey consumers which were primarily for personal, household, or family purposes.

66. When attempting to collect debts, Defendant uses the mail, telephone, the internet and other instruments of interstate commerce.

~~27.~~67. Defendant purchases past-due and defaulted consumer accounts for pennies on the dollar, and then attempt to collect those accounts themselves or through other collection ~~letters, lawsuits, and post-judgment collection efforts~~agencies or debt collectors.

~~28. Significant amounts of these accounts are "retail charge accounts" as defined at N.J.S.A. 17:16C-1(r).~~

~~29. By purchasing and taking assignment of the accounts, Defendants acted as "sales finance compan[ies]" as defined at N.J.S.A. 17:16C-1(f).~~

~~30. By purchasing, taking assignment of, and/or enforcing the accounts, Defendants engaged in the "consumer loan business" as defined at N.J.S.A. 17:11C-2.~~

~~31. During all times relevant to this action, DAP, CSR, and Credit Shop~~Defendant has asserted that Plaintiff incurred or owed a certain financial obligation originating and ~~were not licensed as "sales finance company[ies]" or "consumer lender[s]" pursuant to the NJCFLA, at N.J.S.A. 17:11C-3.~~

~~32.~~68. ~~The Debts~~which arose from one or more transactions which were primarily for ~~Plaintiff's~~Schmidt's personal, family, or household purposes.

69. Debt collectors like Defendant file hundreds of thousands of collection lawsuits in the State of New Jersey, clogging the State Court's docket, wasting judicial resources and harassing New Jersey consumers.

~~33.~~70. The ~~debts~~Debt alleged to be owed by ~~Plaintiff and those similarly situated were~~Schmidt was incurred for personal, family or household purposes.

~~34.~~71. ~~Defendants contend~~Defendant contends that the ~~accounts were~~Account was past-due and in default when they attempted to acquire ~~them~~it.

~~35. The Accounts were allegedly assigned to Defendants for collecting the Debt.~~

~~36. Defendants contend that the accounts were past-due and in default when they were placed with or assigned to Defendants for collection.~~

~~**. Plaintiff Schmidt**~~

~~38. Sometime prior to the date this action was filed, Defendants allegedly purchased and attempted to take assignment of a consumer account that had allegedly been extended to Plaintiff Schmidt ("Account" or "Debt").~~

~~39. The Account was used for personal, family, or household purposes.~~

~~40. Defendants allege Plaintiff Schmidt defaulted on the Account.~~

~~41. Defendants purchased the pool of defaulted consumer accounts, including the Account, for pennies on the dollar.~~

~~42. The accounts were past-due and in default when it was placed with or assigned to Defendants for collection.~~

~~43. Upon information and belief, after Defendants purchased the pool of defaulted consumer accounts, Defendants unlawfully assessed interest on the accounts.~~

~~44. This void Debt was then transferred to Unifund CCR LLC (Unifund").~~

~~45. Unifund then began collecting on the void Debt including sending collection letters.~~

72. Defendant is a debt collector under the FDCPA.

**C. Unlawful Enforcement of a Void Debt**

~~46.~~73. On November 21, 2019, Unifund ~~commenced~~CCR LLC filed a collection lawsuit against Plaintiff in ~~Unifund CCR LLC a/a/o Barclays Bank Delaware v. Schmidt, Docket No. BER-DC-19530-19~~the Superior Court of New Jersey, Bergen County, Law Division – Special Civil Part, under Docket Number BER-DC-019530-19, seeking to collect $807.93 on the Account ("Collection Lawsuit~~"), when the debt was void since Defendants were not properly licensed under the New Jersey Consumer Finance Licensing Act or any other New Jersey~~

consumer lending statute”). *See* **Exhibit E**.

47.74. Unifund obtainedOn February 20, 2020, a default judgment was entered against Plaintiff.

75. Plaintiff ultimately paid this void judgment, as evidenced by a Warrant of Satisfaction filed on November 18, 2021. *See* **Exhibit F**.

76. Had Plaintiff known the Debt was void pursuant to the NJCFLA, Plaintiff would not have defended againstpaid the Debt since it was not owed to Defendants and Unifund.

77. The Collection Lawsuit deprived Plaintiff and other New Jersey consumers of truthful, non-misleading, information.

78. Plaintiff reasonably relied on Defendant’s misrepresentations regarding the validity of the Debt.

79. Plaintiff expended personal time and resources to investigate the alleged obligation and review her records, treating the Debt as valid rather than immediately dismissing it as void.

80. As a result of the Defendants’ unlawful actions, Plaintiff has suffered an ascertainable loss.

48.81. As a result of the unlawful collection of the void Debt, Plaintiff experienced emotional damages like stress, anxiety and embarrassment and suffered ascertainable damages in the form of costs to investigate the Debt and damage to her creditworthiness.

49.82. Had Plaintiff known the Debt was void pursuant to the NJCFLA, Plaintiff would not have paid the Debt voluntarily since it was not owed to Defendants.

50.83. By purchasing and taking assignment of the accounts, DAP, CSR, and Credit Shop engaged in the “consumer loan business” as defined at N.J.S.A. 17:11C-2 (“Any person

directly or indirectly engaging . . . in the business of buying, discounting or endorsing notes, or of furnishing, or procuring guarantee or security for compensation in amounts of $50,000 or less, shall be deemed to be engaging in the consumer loan business").

~~51.~~84. By purchasing and taking assignment of the accounts DAP, CSR, and Credit Shop acted as a "sales finance company" as defined at N.J.S.A. 17:16C-1(f).

~~52.~~85. No one informed Plaintiff that DAP, CSR, and Credit Shop, were not licensed under the NJCFLA.

~~53.~~86. No one informed Plaintiff that the Account was void pursuant to the NJCFLA.

~~54.~~87. Enforcement of the Account was unauthorized and unlawful because DAP, CSR, and Credit Shop, did not have a license to engage in business as a "sales finance company" or a "consumer lender" pursuant to the NJCFLA, at N.J.S.A. 17:11C-3.

~~55.~~88. The Account was void upon assignment to DAP, CSR, and Credit Shop, pursuant to N.J.S.A. 17:11C-33(b).

~~55. As a result of the unlawful collection of the void Debt, Plaintiff experienced stress, anxiety and embarrassment.~~

**~~C.~~D. The Class**

~~56.~~89. During the period beginning from six years prior to the date when Plaintiff's Complaint was filed, numerous New Jersey consumers were subject to unlawful collection attempts by Defendants when the debts were void under the New Jersey Consumer Finance Licensing Act.

~~57.~~90. During the period beginning from six years prior to the date when Plaintiff's Complaint was filed, Defendants collected money from numerous New Jersey consumers on accounts assigned to Defendants when the debts were void under the New Jersey Consumer

Finance Licensing Act.

~~58.~~91. During the period beginning from six years prior to the date when Plaintiff's Complaint was filed, numerous New Jersey consumers made payments to Defendants on accounts assigned to Defendants when the debts were void under the New Jersey Consumer Finance Licensing Act.

~~59.~~92. During the period beginning from six-~~year~~years prior to the date when Plaintiff's Complaint was filed, Defendants attempted to collect money from Plaintiff and numerous New Jersey consumers on accounts acquired when DAP, CSR, and Credit Shop were not properly licensed.

~~60.~~93. During the period beginning from six-~~year~~years prior to the date when Plaintiff's Complaint was filed, the accounts that Defendants allegedly purchased were void upon assignment, pursuant to N.J.S.A. 17:11C-33(b).

## CLASS ACTION ALLEGATIONS

~~61.~~94. Plaintiff brings this action individually and as a class action on behalf of all others similarly situated pursuant to Rule 4:32 of the New Jersey Rules of Court.

~~62.~~95. Subject to discovery and further investigation which may require Plaintiff to modify the following class definition at the time Plaintiff moves for class certification, Plaintiff seeks certification of a class and subclass initially defined as follows:

> **Class**: All natural persons with addresses in the State of New Jersey who are listed as the borrower or purchaser in an account assigned to Distressed Asset Portfolio III, LLC, CreditShop Receivables, LLC, and/or Credit Shop LLC fka Credit Shop, Incorporated or any of its sister or parent entities, at any time the respective entity was not licensed under the New Jersey Consumer Finance Licensing Act, who were subject to collection including collection emails, collection letters, collection calls/texts, collection actions, and credit reporting on or after November 20, 2019 (six year prior to the date this complaint is filed).

**Payment Subclass**: All members of the Class who paid any money voluntarily or involuntarily on the assigned account.

~~63.~~96. Plaintiff seeks to recover declaratory relief on behalf of the class and attorney's fees and costs to the extent allowed by law.

~~64.~~97. Plaintiff seeks to recover statutory damages, actual damages, restitution and attorney's fees and costs on behalf of herself and all class members under the claims asserted herein to the extent allowed by law.

~~65.~~98. The Class and Subclass for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

~~66.~~99. There are questions of law and fact common to the members of the Class and Subclass that predominate over questions affecting only individuals, including but not limited to:

A. Whether Defendants are "persons" subject to the requirements of the CFA;

B. Whether Defendants' assessment of interest and attempted collection of consumer debts from Plaintiff and those similarly situated constitutes the subsequent performance of the sale of merchandise within the meaning of the CFA at N.J.S.A. 56:8-2;

C. Whether Defendants' assessment of interest and attempted collection of consumer debts from Plaintiff and those similarly situated was made in connection with of the sale of merchandise within the meaning of the CFA at N.J.S.A. 56:8-2;

D. Whether Defendants' assessment of interest and attempts to collect consumer debts acquired when it was not properly licensed constitutes an unconscionable commercial practice, deception, fraud, false promise, false pretense and/or misrepresentation in violation of the CFA at N.J.S.A. 56:8-2;

E. Whether the debts are void;

F. Whether the judgments entered are void on cases filed when the debts are void; and

G. The amounts that the Class are entitled to recover from Defendants for damages including treble damages under the CFA, disgorgement and

restitution.

~~67.~~100. There are questions of law and fact common to the members of the Payment Subclass that predominate over questions affecting only individuals, including but not limited to:

A. The equitable relief that they may be entitled to relating to amounts collected from them on judgments entered on cases filed on accounts acquired by the unlicensed entities under the NJCFLA and pursuant to the CFA at N.J.S.A. 56:8-19;

B. Whether Plaintiff and those similarly situated suffered an ascertainable loss in the form of all amounts alleged owed or paid to Defendants or their agents as a result of Defendants' collection attempts including filing civil collection complaints on void debts under the NJCFLA;

C. Whether Plaintiff and those similarly situated are entitled to treble damages for all ascertainable losses incurred pursuant to the CFA at N.J.S.A. 56:8-19.

~~68.~~101. There are questions of law and fact common to the members of the Payment Subclass that predominate over questions affecting only individuals, including but not limited to:

A. Whether Defendants violated the CFA; and

B. Whether Plaintiff, and the Payment Subclass are entitled to damages.

~~69.~~102. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. A class action will cause an orderly and expeditious administration of the claims of the Class and Subclass and will foster economies of time, effort and expense by avoiding thousands of individual suits that will be based on the same legal theories that can be resolved in a single proceeding.

~~70.~~103. Plaintiff's claims are typical of the claims of the members of the Class and

the Subclass.

~~71.~~104. The questions of law and/or fact common to the members of the Class and Subclass predominate over any questions affecting only individual members.

~~72.~~105. Plaintiff does not have interests antagonistic to those of the Class and Subclass.

~~73.~~106. The Class and Subclass are readily identifiable. The Defendants have records of each account that they acquired when they were not properly licensed under the NJCFLA and the payments made on those accounts from Subclass members.

~~74.~~107. Plaintiff will fairly and adequately protect the interests of the Class and Subclass and has retained competent counsel experienced in the prosecution of consumer litigation. Proposed Class Counsel have investigated and identified potential claims in the action; have a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

~~75.~~108. The prosecution of separate actions by individual members of the Class and Subclass would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action or the prosecution of separate actions by individual members of the class would create the risk that adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

~~76.~~109. Plaintiff does not anticipate any difficulty in the management of this litigation.

## FIRST COUNT
## Declaratory Judgment and Injunctive Relief for Plaintiff and the Class

~~77.~~110. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

~~78.~~111. Section 3 of the NJCFLA, codified at N.J.S.A. 17:11C-3, provides that "No person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act."

~~79.~~112. A violation of section 3 in the making or collection of a loan is a crime in the fourth degree, voids the contracts governing the alleged account(s), and precludes any further right to collect or receive any principal, interest, or charges, pursuant to the NJCFLA, at N.J.S.A. 17:11C-33(b).

~~80.~~113. Thus, the Defendants lacked the legal right to acquire and collect the debts when DAP, CSR, and Credit Shop did not hold the licensure required by New Jersey Law.

~~81.~~114. Any judgment arising from an action illegally filed by Defendants is void ab initio or cannot be enforced.

~~82.~~115. The existence of the collection complaints and judgments are public records that have and will continue to adversely affect the Plaintiff, the Class, and the Subclass.

~~83.~~116. DAP, CSR, and Credit Shop violated section 3 of the NJCFLA by engaging in the "consumer loan business" in New Jersey without a license to do so.

~~84.~~117. DAP, CSR, and Credit Shop violated section 3 of the NJCFLA by acting as a "sales finance company[ies]" without a license to do so.

~~85.~~118. DAP's, CSR's and Credit Shop's violations of the NJCFLA constitute unconscionable commercial practices and otherwise violate the NJCFA at N.J.S.A. 56:8-2.

~~86.~~119. Plaintiff suffered ascertainable loss from Defendants' CFA violations.

~~87.~~120. Plaintiff therefore has standing to seek injunctive and other equitable relief under the CFA, at N.J.S.A. 56:8-19.

~~88.~~121. Moreover, under the Uniform Declaratory Judgments Law at N.J.S.A. 2A:16-53, the Plaintiff and the putative Class members are "person[s] interested under a… written contract" and "person[s]… whose rights, status or other legal relations are affected by a statute" and therefore, they "may have determined any question of construction or validity arising under the… contract… and obtain a declaration of rights, status or other legal relations thereunder."

~~89.~~122. Plaintiff, the Class, and the Subclass are entitled to a declaratory judgment that the accounts Defendants unlawfully took assignment of are void.

~~90.~~123. Plaintiff, the Class, and the Subclass are entitled to a declaratory judgment that any judgments obtained by the Defendants against them are void or unenforceable.

~~91.~~124. The Defendants and their agents or others acting on their behalf should be enjoined from taking any further action or failing to take actions that result in any effort to enforce the accounts and judgments to be declared void or unenforceable.

**WHEREFORE**, as to Count One, Plaintiff, on behalf of herself and the Class, hereby requests a Judgment against Defendants,

a. Granting class certification for class-wide equitable relief under R. 4:32-1(b)(2), and issuing a declaratory judgment applicable to the Plaintiff and putative Class, pursuant to the Uniform Declaratory Judgments Law at N.J.S.A. 2A:16-53, ruling that:

   1. DAP, CSR, and Credit Shop violated section 3 of the NJCFLA by engaging in the "consumer loan business" in New Jersey without a license to do so;

   2. Alternatively, or additionally**,** DAP, CSR, and Credit Shop violated section 3 of the NJCFLA by engaging business as a "sales finance company" without a license to do so;

3. The Plaintiff's and putative class members' accounts of which Defendants allegedly took assignment and/or enforced are void by operation of N.J.S.A. 17:11C-33(b);

4. That the void accounts cannot be revived through reassignment;

5. That the judgments obtained by Defendants in actions based on an account allegedly acquired by Defendants are void or unenforceable;

6. At all relevant times hereto Defendants did not have the legal capacity to collect or receive any principal, interest or charges under the void accounts, through any collection mechanism;

7. Defendants lack the capacity to seek enforcement of any of the Plaintiff's or putative class members' accounts or any judgments obtained on such accounts or to enforce any judgments obtained;

b. Granting a permanent injunction against the Defendants, pursuant to the CFA, at N.J.S.A. 56:8-19, prohibiting them from making any further attempts to enforce New Jersey consumers' accounts, including an injunction against any attempt to collect upon, enforce or assign the account contracts, or to seek collection remedies on or assign any outstanding judgments entered in collection actions on the accounts;

c. Directing the Defendants to provide equitable notice relief pursuant to the CFA, providing for notice to Class members of the declaratory and injunctive ruling;

d. Awarding Plaintiff's counsel reasonable attorneys' fees and costs under the CFA; and

e. For such other and further relief as the Court deems equitable and just.

**SECOND COUNT**
**New Jersey Consumer Finance License Act for Plaintiff and the Class**

~~92.~~125. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

~~93.~~126. Section 3 of the NJCFLA, codified at N.J.S.A. 17:11C-3, provides that "No person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act."

~~94.~~127. A violation of section 3 in the making or collection of a loan voids the

loan and precludes any further right to collect or receive any principal, interest or charges, pursuant to the NJCFLA, at N.J.S.A. 17:11C-33(b).

~~95.~~128. Thus, DAP, CSR, and Credit Shop lacked the legal right to acquire and collect the debts when it did not hold a license required by New Jersey Law.

~~96.~~129. Any judgment arising from an action illegally filed by Defendants is void ab initio and cannot be enforced.

~~97.~~130. The existence of the judgments are public records that have and will continue to adversely affect the Class.

~~98.~~131. DAP, CSR, and Credit Shop violated section 3 of the NJCFLA by engaging in the "consumer loan business" in New Jersey without a license to do so.

~~99.~~132. DAP, CSR, and Credit Shop violated section 3 of the NJCFLA by acting as "sales finance company[ies]" without a license to do so.

**WHEREFORE**, as to Count Two, Plaintiff, on behalf of herself, the Class, and Payment Subclass, hereby request a Judgment against Defendants, jointly and severally,

a. Granting class certification of the Class and Payment Subclass under R. 4:32-1(b)(3);

b. Awarding, to the Payment Subclass, "three times any amount of the interest, costs or other charges collected in excess of that authorized by law" under the NJCFLA, at N.J.S.A. 17:11C-33(b);

c. Granting a permanent injunction in favor of the Class and against the Defendants prohibiting them from making any further attempts to enforce New Jersey consumers' accounts, including an injunction against any attempt to collect upon, enforce or assign the account contracts, or to seek collection remedies on or assign any outstanding judgments entered in collection actions on the accounts;

d. Directing the Defendants to provide equitable notice relief, providing for notice to Class members of the declaratory and injunctive ruling;

e. Awarding Plaintiff's counsel reasonable attorneys' fees and costs;

f. For pre-judgment and post-judgment interest; and

g. For such other and further relief as the Court deems equitable and just.

## THIRD COUNT
## Consumer Fraud Act for Plaintiff, the Class, and Payment Subclass

~~100.~~133. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

~~101.~~134. Section 3 of the NJCFLA, codified at N.J.S.A. 17:11C-3, provides that "No person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act."

~~102.~~135. A violation of section 3 in the making or collection of a loan voids the loan and precludes any further right to collect or receive any principal, interest, or charges, pursuant to the NJCFLA, at N.J.S.A. 17:11C-33(b).

~~103.~~136. Thus, DAP, CSR, and Credit Shop lacked the legal right to acquire and collect the debts when they did not hold a license required by New Jersey Law.

~~104.~~137. The void debts are still void when assigned to Unifund.

~~105.~~138. Any judgment arising from an action illegally filed by Defendants is void ab initio or cannot be enforced.

~~106.~~139. The existence of the judgments are public records that have and will continue to adversely affect the Class.

~~107.~~140. DAP, CSR, and Credit Shop violated section 3 of the NJCFLA by engaging in the "consumer loan business" in New Jersey without a license to do so.

~~108.~~141. DAP, CSR, and Credit Shop violated section 3 of the NJCFLA by acting as "sales finance company[ies]" without a license to do so.

~~109.~~142. DAP's, CSR's and Credit Shop's violations of the NJCFLA, and

Defendants' attempt to collect void debts, constitute unconscionable commercial practices and otherwise violate the Consumer Fraud Act (CFA) at N.J.S.A. 56:8-2.

~~110.~~143. Plaintiff and the Class members suffered ascertainable loss(es) from Defendants' CFA violations and enforcement or attempted enforcement of void debts.

~~111.~~144. Plaintiff and the Class members suffered ascertainable loss(es) in the amount of monies paid on the void Account.

~~112.~~145. Defendants are "persons" within the meaning of the CFA at N.J.S.A. 56:8-1.

~~113.~~146. Plaintiff and those similarly situated purchased "merchandise" within the meaning of the CFA at N.J.S.A. 56:8-1.

~~114.~~147. Defendants engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in connection with the sale of merchandise in violation of the CFA at N.J.S.A. 56:8-2.

~~115.~~148. Defendants engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in the subsequent performance of the sale of merchandise in violation of the CFA at N.J.S.A. 56:8-2.

~~116.~~149. Defendants committed unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in direct violation of the CFA at N.J.S.A. 56:8-2 by:

a. Misrepresenting in its dunning letters that it had the legal right to collect on the accounts when the debts were void;

b. Filing civil collection complaints on void debts;

c. Representing, explicitly or impliedly, in the collection complaints and related communications with Plaintiff and those similarly situated that they had right to collect and file the actions such that the collection complaints could be properly filed and maintained even ~~thought~~though the debts were void; and

d. Demanding and/or accepting payments, including using bank levies and wage garnishments, on the void accounts and the judgments obtained from actions filed when the debts were void;

~~117.~~150. As a result of Defendants' unlawful actions and violations of the CFA, Plaintiff, the Class members, and the Payment Subclass members suffered ascertainable loss(es), from Defendants' CFA violations in the amount monies collected, and/or paid on the void accounts, entitling them to treble damages under the CFA, at N.J.S.A. 56:8-19.

**WHEREFORE**, as to Count Three, Plaintiff, on behalf of herself and the putative class members, hereby request a Judgment against Defendants, jointly and severally,

a. Granting class certification of the Class under R. 4:32-1(b)(3);

b. Awarding treble damages to Plaintiff and the Class under the CFA, at N.J.S.A. 56:8-19;

c. Granting a permanent injunction against the Defendants, pursuant to the CFA, at N.J.S.A. 56:8-19, prohibiting them from making any further attempts to enforce New Jersey consumers' accounts, including an injunction against any attempt to collect upon, enforce or assign the account contracts, or to seek collection remedies on or assign any outstanding judgments entered in collection actions on the accounts;

d. Directing the Defendants to provide equitable notice relief pursuant to the CFA, providing for notice to Class members of the declaratory and injunctive ruling;

e. Awarding Plaintiff's counsel reasonable attorneys' fees and costs under the CFA, at N.J.S.A. 56:8-19;

f. For pre-judgment and post-judgment interest; and

g. For such other and further relief as the Court deems equitable and just.

## FOURTH COUNT
## Fraud for Plaintiff, Class, and the Payment Subclass

~~118.~~151. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

~~119.~~152. By taking possession of the Class members' alleged accounts and

attempting collection of the same, Defendants made material misrepresentations that they had the legal right to possess and collect the alleged debts when they did not.

~~120.~~153. By taking possession of the Class members' alleged accounts and attempting collection of the same, Defendants made material misrepresentations to the Class members that the debts were valid when the debts were void.

~~121.~~154. By taking possession of the Class members' alleged accounts and attempting collection of the same, Defendants made material misrepresentations to the Class members that they were the lawful creditor when they were not.

~~122.~~155. At the time Defendants took possession of the Class members' alleged accounts, Defendants knew or should have known that the debts were void.

~~123.~~156. In attempting to enforce and/or collect the Class members' alleged debts, Defendants intended that the Class members rely on their material misrepresentations that Defendants had the legal right to possess and collect on the Class members' alleged accounts.

~~124.~~157. The Class members reasonably relied on Defendants' material misrepresentations that they were legally allowed to attempt enforcement of the Class members' alleged debts.

~~125.~~158. The Class members have been damaged as a result of their reasonable reliance on Defendants' misrepresentations that they had the legal right to attempt collection of the Class members' alleged debts when they did not.

**WHEREFORE**, as to Count Four, Plaintiff, on behalf of herself, the Class members, and the Payment Subclass members, hereby requests a Judgment against Defendants,

a. Granting class certification of the class under R. 4:32-1(b)(3);

b. A money judgment for compensatory damages based on Defendants' material misrepresentations and the Payment Subclass members' resulting reliance and damages;

c. A money judgment for punitive damages based on Defendants' material misrepresentations and the Payment Subclass members' resulting reliance and damages;

d. For attorney's fees, litigation expenses and costs in connection with this action;

e. For pre-judgment and post-judgment interest; and

f. For such other and further relief as the Court deems equitable and just.

## FIFTH COUNT
## Fraudulent Inducement for Plaintiff, the Class, and the Payment Subclass

~~126.~~159. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

~~127.~~160. By taking possession of the Class members' alleged account(s) and attempting collection of the same, Defendants made a material misrepresentation of a presently existing fact to the Payment Subclass members that they had the legal right to possess and collect the void debts when they did not.

~~128.~~161. At the time Defendants took possession of the Class members' alleged accounts, Defendants knew that they were not legally licensed to possess or attempt to collect the Class members' alleged debts since the debts were void.

~~129.~~162. In attempting to enforce and/or collect the Class members' alleged debts, Defendants intended that the Class members rely on their material misrepresentations that Defendants had the legal right to collect the void accounts.

~~130.~~163. The Class members reasonably relied on Defendants' material misrepresentations that they were legally allowed to attempt enforcement of the Class members' alleged debts to their detriment.

**WHEREFORE**, as to Count Five, Plaintiff, on behalf of herself, the Class members, and the Payment Subclass members, hereby requests a Judgment against Defendants,

a. Granting class certification of the Payment Subclass under R. 4:32-1(b)(3);

b. A money judgment for compensatory damages based on Defendants' false misrepresentations and the Payment Subclass members' resulting reliance and damages;

c. A money judgment for punitive damages based on Defendants' false misrepresentations and the Payment Subclass members' resulting reliance and damages;

d. For attorney's fees, litigation expenses and costs in connection with this action;

e. For pre-judgment and post-judgment interest; and

f. For such other and further relief as the Court deems equitable and just.

## SIXTH COUNT
## Unjust Enrichment
## Disgorgement on Behalf of Plaintiff and the Payment Subclass

129. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

130. The Defendants have been unjustly enriched by the funds that they have received from the Payment Subclass members.

131. Plaintiff paid money to the Defendants under a mistake of fact since the Debt was void under the NJCFLA.

132. As a result, Defendants knowingly retained a financial benefit at Plaintiff's and the Payment Subclass's expense, and it would be inequitable and unjust for Defendants to retain those funds. Plaintiff and the Payment Subclass are entitled to restitution and disgorgement of all such wrongfully retained funds.

133. The Payment Subclass members reasonably expected remuneration from the payments to Defendants through Defendant's subsequent reporting to credit reporting agencies that the alleged debts had been paid in full or that the alleged outstanding balance had decreased.

134. The Payment Subclass members paid money to Defendants under a mistake of fact since the debts were void under the NJCFLA.

135. The funds collected by Defendants have conferred a benefit on the Defendants.

136. Defendants know that that they received a benefit by receiving funds from the Payment Subclass members.

137. Defendants' retention of the benefits conferred on them by the Payment Subclass based on illegally obtained accounts and judgments would be unjust.

138. Defendants should be ordered to disgorge or provide restitution to the Payment Subclass.

139. The disgorgement or restitution should include any profits or other benefits enjoyed by the Defendants as a result of the receipt of the Payment Subclass's funds.

**WHEREFORE**, as to Count Six, Plaintiff, on behalf of herself and the putative Payment Subclass members, hereby requests a Judgment against Defendants,

a. Granting class certification of the Payment Subclass under R. 4:32-1(b)(3);

b. A money judgment for restitution or disgorgement of all amounts collected by the Defendants from the Payment Subclass including any profits or other benefit enjoyed by Defendants as a result of receiving and using the funds from them;

c. For attorney's fees, litigation expenses and costs in connection with this action;

d. For pre-judgment and post-judgment interest; and

e. For such other and further relief as the Court deems equitable and just

## JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial by jury.

## CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding, except:

- *Unifund CCR LLC a/a/o Barclays Bank Delaware v. Schmidt*, Docket No. BER-DC-019530-19 (Super Ct. Law Div);

KIM LAW FIRM LLC

s/Yongmoon Kim
Yongmoon Kim

*Attorneys for Plaintiff*

Dated: March 26, 2026